**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                    No. CR 19-2853 JB

JOSEPH MOISES ORTIZ,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentencing Investigation Report and Sentencing Memorandum, filed February 13, 2020 (Doc. 27)("Objections"). The Court held a sentencing hearing on February 19, 2020. <u>See</u> Clerk's Minutes at 1, filed February 19, 2020 (Doc. 31). The primary issue is whether the Court can apply a 4-level sentencing enhancement under United States Sentencing Guidelines ("U.S.S.G" or "the Guidelines") § 2K2.1(b)(6)(B), which applies when a defendant uses or possesses a firearm in connection with another felony offense, because Defendant Joseph Moises Ortiz made telephone calls to the Santa Fe Police Department in Santa Fe, New Mexico, threatening to bring his gun and shoot them. <u>See</u> Response by United States as to Joseph Moises Ortiz' Objection to Presentence Investigation Report, filed February 14, 2020 (Doc. 29)("Response"). The Court sustains the Objection and concludes that the 4-level sentencing enhancement under § 2K2.1(b)(6)(B) is not applicable, because Ortiz' possession of the firearm and ammunition was not in connection with a felony offense.

## FACTUAL BACKGROUND

On August 6, 2019, Ortiz telephoned the Santa Fe County Regional Emergency Communications Center, expressing his "frustration with" the Santa Fe Police Department's investigation into his sister's death. Presentence Investigation Report ¶ 14, at 5, filed January 14, 2020 (Doc. 22)("PSR"). See id. ¶ 11, at 4. During this telephone call, Ortiz told the Santa Fe County Regional Communications Center that he would "cause chaos in Santa Fe if nothing was done about his sister's death." PSR ¶ 8, at 3. Later that day, a Santa Fe Police Department lieutenant called the number from which Ortiz' nephew, I.V., had called, and Ortiz answered. See PSR ¶¶ 7, 9 at 3-4. Ortiz "learned that the next of kin notification was made to an aunt who was not in a proper state of mind." PSR ¶ 9, at 3-5. Ortiz told the lieutenant that "law enforcement did not care about his sister and thought she was a nobody," and so Ortiz would "start[] a war in Santa Fe" and "eliminate the 'junkies' to find out what happened to his sister." PSR ¶ 9, at 4. Ortiz also told the lieutenant that he would commit an "El Paso," "referring to a mass shooting that occurred the previous weekend in El Paso, Texas." PSR ¶ 9, at 4. On August 7, 2019, a New Mexico State Police agent made a recorded telephone call to Ortiz. See PSR ¶ 10, at 4. During this call, Ortiz "stated he was aware of who was responsible for his sister's death and claimed his threats were promises." PSR ¶ 10, at 4. On August 9, 2019, the Federal Bureau of Investigation executed a search warrant for Ortiz' residence, which resulted in the seizure of: (i) one magazine loaded with 9mm ammunition; (ii) one 9mm pistol containing a loaded magazine; (iii) one empty box of 9mm ammunition; and (iv) sixteen rounds of 9mm ammunition. See PSR ¶ 13, at 4; Criminal Complaint ¶ 8, at 3, filed August 23, 2019 (Doc. 1). At the time, Ortiz had already been convicted of a felony offense. See PSR ¶ 14, at 5.

## PROCEDURAL BACKGROUND

The Indictment charges Ortiz for knowingly possessing "a firearm and ammunition in and affecting interstate commerce" as a felon in violation of 18 U.S.C. §§ 922 (g)(1) and 924. Indictment at 1, filed August 27, 2019 (Doc. 3)(citing 18 U.S.C. §§ 922(g)(1) and 924).   On January 14, 2020, Ortiz pled guilty to the Indictment.  See Clerk's Minutes at 1, filed November 21, 2019 (Doc. 19).    The United States Probation Office ("USPO") filed a Presentence Investigations Report.  See PSR at 1, filed January 14, 2020 (Doc. 22).  The PSR's paragraph 15 states:

> The defendant was initially charged with Assault With Intent to Commit a Violent Felony on a Peace Officer and Aggravated Assault Upon a Peace Officer With Intent to Commit a Felony in New Mexico First Judicial District Court Case No.: D-101-CR-2019-00617, and the defendant possessed the firearm in connection with these offense.  The state charges were dismissed as a result of the defendant being prosecuted for the current federal charge.

PSR ¶ 15, at 5.  Paragraph 20 states: "Base Offense Level: The guideline for a violation of 18 U.S.C. § 922 (g)(1) is USSG §2K2.1.  The base offense level is 14.  USSG §2K2.1(a)(6)."  PSR ¶ 20, at 6.  The Court sentenced Ortiz on February 19, 2020.  See Notice of Hearing, filed November 21, 2010 (Doc. 21)(text-only entry).

### 1.     The Objections.

Ortiz objects to the USPO's PSR.  See   Objections at 1.  Ortiz objects to the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), because he argues that Plaintiff United States of America "cannot show that the possession of the firearm emboldened him to commit the crime of assault."   Objections at 8.   He asks the Court to sentence him to 12 months, below the recommended Guideline range of 21 to 27 months.  See Objections at 1.  Ortiz first objects to PSR ¶¶ 15 and 20, at 5-6.  See Objections at 2.  Paragraph 15 states that Ortiz "possessed the firearm in connection with" his state charges -- Assault with Intent to Commit a Violent Felony on a Peace

Officer and Aggravated Assault Upon a Peace Officer With Intent to Commit a Felony.  PSR ¶ 15, at 5.  Paragraph 20 of the PSR, which discusses Count 1: Felon in Possession of a Firearm and Ammunition, states that, for the base offense level, "[t]he guideline for a violation of 18 U.S.C. § 922(g)(1) is USSG § 2K2.1.  The base level offense is 14.  USSG § 2K2.1(a)(6)."  PSR ¶ 20, at 6.  Ortiz objects to those paragraphs, because those paragraphs are the basis for the USPO's suggested application of a 4-level enhancement to Ortiz' base offense under U.S.S.G. § 2K2.1(b)(6)(B).  See Objections at 2.  Ortiz argues that, because the U.S.S.G. § 2K2.1(b)(6)(B) enhancement is applicable where a defendant uses or possesses a firearm in connection with another felony offense, the enhancement is not applicable to him, because he did not possess the firearm in connection with another felony offense.   See Objections at 2 (citing U.S.S.G. § 2K2.1(b)(6)(B)).  He notes that the United States Court of Appeals for the Tenth Circuit has concluded that possession of a firearm that "'embolden[s] the possessor to commit the offense'" qualifies as possession "in connection with another felony offense."  Objections at 2 (quoting United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012)).

Ortiz then argues that the PSR does not give a factual basis for the 4-level enhancement. See Objections at 2-3.  He notes that his telephone call to the Santa Fe County Regional Emergency Communications Center, in which Ortiz threatened to bring a handgun and explosive to the Santa Fe Police Department and to "'[b]low everyone up'" at the Santa Fe Police Department, cannot be considered "an assault under New Mexico law because the individual who took the phone call cannot be said to have reasonably believed that a battery was imminent."  Objections at 3. Moreover, Ortiz argues, the United States has not demonstrated that Ortiz possessed the firearm in connection with the assault, because the United States has not demonstrated that the firearm was in Ortiz' proximity when Ortiz made the telephone call.  See Objections at 3.

Ortiz then argues that the United States' discovery does not give a factual basis for the 4-level enhancement, because it does not provide facts that "support a charge of assault as defined by New Mexico law." Objections at 2-3. Although Ortiz acknowledges that his statements "are arguably threats," he contends that the threat of harm "was by no means immediate," because he threatened to harm the Santa Fe Police Department only if it did not provide information within thirty-four hours regarding a family members' death. Objections at 4. Ortiz supports his request for a 12-month sentence by applying each of the 18 U.S.C. § 3553 sentencing factors to his case. See Objections at 4-9.

       **2.**       **The Response.**

The United States responds. See Response at 1. The United States addresses Ortiz' first Objection that the United States has not demonstrated that Ortiz possessed the firearm in connection with another felony offense as U.S.S.G. § 2K2.1(b)(6)(B) requires. See Response at 2. The United States argues that, for the Court to apply U.S.S.G. § 2K2.1(b)(6)(B), the United States need show only "that the firearm had the potential to facilitate the other felony offense" and not "that the firearm actually facilitated the other felony offense." Response at 2 (citing United States v. Perry, 727 F. App'x 539, 541 (10th Cir. 2018)(unpublished); United States v. Sandidge, 784 F.3d 1055 (7th Cir. 2015); United States v. Dodge, 61 F.3d 142, 144, 146-47 (2d Cir. 1995) cert denied., 516 U.S. 969 (1995); United States v. Hart, 324 F.3d 740 (D.C. Cir. 2003)). Moreover, the United States argues, the Tenth Circuit has applied the U.S.S.G. § 2K2.1(b)(6)(B) enhancement in a case similar to Ortiz's case, in which the defendant who possessed the firearm previously had made threats to use it. See Response at 3 (citing United States v. Hoyle, 751 F.3d 1167 (10th Cir. 2014)). The United States then lists undisputed facts that support that Ortiz possessed the firearm in connection with another felony offense: (i) he threatened to bring a gun to the Santa Fe Police

Department to "'blow everyone up,'" Response at 3 (quoting Objections at 3); (ii) he made a second telephone call to the Santa Fe Police Department, in which he stated that "'there might be a re-enactment in Santa Fe of what happened in El Paso, Texas,'" Response at 4 (quoting PSR ¶¶ 7-14, at 3-5); (iii) during another telephone call with the Santa Fe Police Department, he stated that he would "start a war on the streets" and that he had "'the courage to actually follow through with it,'" Response at 4 (quoting PSR ¶¶ 7-14, at 3-5).  The United States notes that Ortiz' threats "were made in the context of [Ortiz'] long history of threatening behaviors."  Response at 4.  The United States emphasizes that Ortiz' "threats themselves constitute[] a felony under either 18 U.S.C. § 875(c) (making threatening communications in interstate commerce), and N.M. Stat. Ann. § 30-20-12 (use of telephone to terrify, intimidate, threatened, harass, annoy or offend is a felony) or both."  Response at 5.  The United States concludes by stating that possession of a firearm "logically had the potential for facilitating and for emboldening [Ortiz] to threaten to shoot people" and that Ortiz' "argument to the contrary makes no sense in light of the unrebutted evidence, the clearly established law, and common sense."  Response at 5.

### 3.    The Addendum.

The USPO filed an Addendum.  See Addendum to the Presentence Report at 1, filed February 17, 2020 (Doc. 30).  After noting that the United States has not filed any Objections to the PSR, the USPO addresses Ortiz' Objection.  See Addendum at 1-2.  The USPO stated that, in response to Ortiz' threats, law enforcement obtained a search warrant for his home and found a firearm and ammunition during that search.  See Addendum at 2.  Ortiz was then charged in the New Mexico First Judicial Court with Assault with Intent to Commit a Violent Felony on a Peace Officer and Aggravated Assault Upon a Peace Officer with Intent to Commit a Felony, which were dropped in favor of the federal case.  See Addendum at 2.  The USPO agrees with the United States

that Ortiz' threats "in and of themselves constitute felonies under both" United States and New Mexico law.  Addendum at 2.  The USPO notes that the § 2K2.1(b)(6)(B) enhancement applies if the firearm and ammunition "had the potential of facilitating another federal offense," and, thus, applies in this case, because Ortiz' unlawful possession of a firearm certainly could have facilitated or had the potential to facilitate" Ortiz' threatened shootings.  Addendum at 2.  The USPO concludes that this information supports a finding by the preponderance of the evidence that Ortiz possessed a firearm and ammunition in connection with another felony offense.

## RELEVANT LAW REGARDING THE GUIDELINES

Section 2K2.1(b)(6)(B) provides for a 4-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  "[A]nother felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1 cmt. 14(C).  See United States v. Gross, No. CR 16-0454 JB, 2016 WL 9021829, at *15 (D.N.M. Dec. 16, 2016)(Browning, J.)("An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted." (citing United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008))).  Application note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" another felony offense "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. 14(A).  The Tenth Circuit has explained: "The plain and commonly understood meaning of 'facilitate' is to

make easier." United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011). See United States v. Serna, 405 F. Supp. 3d 1107, 1110 (D.N.M. 2019)(Browning, J.).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted. See United States v. Gambino-Zavala, 539 F.3d at 1230 n.3. In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence. See United States v. Magallanez, 408 F.3d at 684-85. See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("[United States v.]Booker therefore does not render judicial factfinding by a preponderance of the evidence per se unconstitutional.").

The 4-level enhancement has four distinct elements, and "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with; (iv) another felony offense." United States v. Kepler, No. CR. 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)). In United States v. Kepler, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun. See United States v. Kepler, 2012 WL 592422, at *6. The Court explained:

> Given that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies. While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler

committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

United States v. Kepler, 2012 WL 592422, at *6.  See United States v Pacheco, No. CR 13-2643 JB, 2014 WL 3421063, at *7 (D.N.M. July 8, 2014)(Browning, J.).

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi[v. New Jersey] purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted).  Apprendi v. New Jersey does not, however, "apply to the present advisory-Guidelines regime," because the sentencing guidelines are no longer mandatory.  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. 220, 259 (2005)).  More recently, the Supreme Court held that Apprendi v. New Jersey's requirements apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. 99 (2013).

In <u>United States v. Magallanez</u>, 408 F.3d at 672, the Tenth Circuit held that <u>Blakely v. Washington</u> and <u>United States v. Booker</u> do not change the district court's enhancement findings analysis.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 684-85.  <u>United States v. Magallanez</u> involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute, and to distribute, methamphetamine.  <u>See</u> 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  <u>See</u> 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months up to 121 to 151 months.  <u>See</u> 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-86, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  <u>United States v. Magallanez</u>, 408 F.3d at 684.  Although <u>United States v. Booker</u> made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." <u>United States v. Magallanez</u>, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  <u>United States v. Olsen</u>, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting <u>United States v. Washington</u>, 11

F.3d 1510, 1516 (10th Cir. 1993)).  "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.).  The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).  Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum.  See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[1]  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States, . . . expands the rule from Apprendi v. New Jersey,. . .

---

[1] United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent. . . .  And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Schmidt, United States v. Banda, and United States v. Hendrickson have persuasive value with respect to a material issue and will assist the Court in its disposition of this Memorandum Opinion and Order.

(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.

United States v. Cervantes-Chavez, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.)(citing United States v. Sangiovanni, No. CR 10-3239 JB, 2014 WL 4347131, at *22-26 (D.N.M. 2014)(Browning, J.)).

In United States v. Ulibarri, 115 F. Supp. 3d 1308 (D.N.M. 2015)(Browning, J.), the Court considered the United States' assertion that the defendant deserved 8 additional offense levels for threatening to cause physical injury to a person to obstruct justice.  See 115 F. Supp. 3d 1336-37 (citing U.S.S.G. § 2J1.2(b)(1)(B)).  The Court stated that, for the offense levels to apply:

> The United States must prove two elements by a preponderance of the evidence.  First, K. Ulibarri's offense must involve "threatening to cause physical injury to a person." U.S.S.G. § 2J1.2(b)(1)(B).  This element requires that K. Ulibarri "communicate[d an] intent to inflict [physical injury] on another[.]" Black's Law Dictionary 1618 . . . .  Second, K. Ulibarri must have made that threat "in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1)(B).

United States v. Ulibarri, 115 F. Supp. 3d at 1336 (first two alterations in United States v. Ulibarri; third alteration added).  The Court determined that, although the United States showed that the defendant "communicated an intent to inflict physical injury" on someone, the United States failed to prove, by a preponderance of the evidence, that the defendant "did so to obstruct the administration of justice." 115 F. Supp. 3d at 1336.  The Court concluded that, because the United States did not meet its burden on this second element, it would not impose the additional 8 offense levels under U.S.S.G. § 2J1.2(b)(1)(B).  See United States v. Ulibarri, 115 F. Supp. 3d at 1336.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning

is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1, n.1(H).  In <u>United States v.</u>

<u>Booker</u>, the Supreme Court notes:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)).  The Supreme Court's

reasoning in <u>United States v. Booker</u> suggests that the consideration of real conduct is necessary

to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be

determined" based on the following:

(1)

      (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

      (B)   in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)   solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)   all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)        any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The court may consider, as relevant conduct, actions that have not

resulted in a conviction.  Pursuant to U.S.S.G. § 6A1.3's commentary, evidentiary standards lower

than beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon

reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See

United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.), aff'd, 523 F.3d

1258 (10th Cir. 2008).   Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir.

2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding

subject to a preponderance of the evidence standard, and clear error review.").  The evidence and

information upon which the court relies, however, must have sufficient indicia of reliability.  See

U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing

determination, the court may consider relevant information without regard to its admissibility

under the rules of evidence applicable at trial, provided that the information has sufficient indicia

of reliability to support its probable accuracy.").

        Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v.

United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997).  In Witte v.

United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a

double-jeopardy challenge.  See 515 U.S. at 404-06.  The defendant in Witte v. United States had

been involved in an unsuccessful attempt to import marijuana and cocaine into the United States

in 1990, and in an attempt to import marijuana in 1991.  See 515 U.S. at 392-93.  In March, 1991,

a federal grand jury indicted the defendant for attempting to possess marijuana with intent to

distribute in association with the defendant's latter attempt to import narcotics.  See 515 U.S.

at 392-93.  At sentencing, the district court concluded that, because the 1990 attempt was part of

the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes.  See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990.  See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense.  See 515 U.S. at 395.  The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution.  See 515 U.S. at 395.  The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals opinions, including a Tenth Circuit opinion, that had previously considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit decision.  See 515 U.S. at 395.  In holding that a district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."  515 U.S. at 401.  The Supreme Court reasoned that

sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."  515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at 149. The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661).  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit caselaw adheres closely to the Supreme Court's results in <u>Witte v. United States</u> and <u>United States v. Watts</u>.  <u>See</u> <u>United States v. Andrews</u>, 447 F.3d 806, 810 (10th Cir. 2006)(applying <u>Witte v. United States</u>' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause).  In <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x at 290.  The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"  168 F. App'x at 290 (quoting <u>United States v. Lauder</u>, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In <u>United States v. Coleman</u>, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime.  <u>See</u> 947 F.2d at 1428.  The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges.  <u>See</u> 947 F.2d at 1428-29 (citing <u>United States v. Duncan</u>, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); <u>United States v. Rodriguez</u>, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban

against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm.  See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.  See 947 F.2d at 1429.  The Tenth Circuit summarized that, in reviewing relevant federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."  947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence.  See 11 F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison.  See 11 F.3d at 1515.  The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required."  11 F.3d at 1515. Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing

McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)).  See United States v. Sangiovanni, 2014 WL
4347131, at *22-26 (concluding that a sentencing court can cross reference from the Guidelines
that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly
punished crime, if it can be established by a preponderance of the evidence that the defendant
committed the more serious crime); United States v. Cervantes-Chavez, 59 F.Supp.3d 1295, 1314-
1315  (D.N.M. 2014)(Browning, J.)(cross-referencing from the guideline for being an illegal alien
in possession of a firearm to the drug-possession guideline after finding by a preponderance of the
evidence that the defendant committed a drug-possession crime).

The Court previously has held that it may consider a defendant's refusal to answer
questions for the PSR, while not drawing an adverse inference from the refusal. See United States
v. Goree, No. CR 11-0285 JB, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.).  The Court
has also held that, although it can consider a defendant's silence about information regarding
herself or others engaging in criminal conduct, it will not rely on that silence to increase the
defendant's sentence.  See United States v. Chapman, 2012 WL 2574814, at *13 n.5 (D.N.M.
2012)(Browning, J.).  Finally, the Court has held that a defendant's "aggression towards other
individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant
information which the Court can consider in fashioning a proper sentence.  United States v.
Romero, No. CR 09-1253 JB 2012 WL 6632493, at *23 (D.N.M. Dec. 6, 2012)(Browning, J.).
See United States v. Tapia, No. CR 12-3012 JB, 2017 WL 6417610, at *10-15 (D.N.M. Dec. 14,
2017).

## ANALYSIS

The Court sustains Ortiz' Objection.  The Court will not apply the § 2K2.1(b)(6)
enhancement, because the United States has not demonstrated by a preponderance of the evidence

that Ortiz possessed a firearm in connection with another felony offense.  The Court first looks at § 2K2.1(b)(6)'s four components to determine whether the United States has demonstrated that U.S.S.G. § 2K2.1(b)(6) is applicable: whether Oritz (i) used or possessed; (ii) a firearm or ammunition; (iii) in connection with; (iv) another felony offense.  See United States v. Kepler, 2012 WL 592422, at *5.  It is undisputed that Ortiz meets the first two requirements: using or possessing a firearm or ammunition.  See Clerk's Minutes at 1 (stating that Ortiz pled guilty to the Indictment).

The question, therefore, is whether the United States satisfies the third and fourth elements -- whether the firearm possession is "in connection with" "another felony offense."  U.S.S.G. § 2K2.1(b)(6).  Ortiz argues that the United States "has not proved that the gun was possessed in conjunction with the alleged assault," referring to Ortiz' initial state charges of Assault with Intent to Commit a Violent Felony on a Peace Officer and Aggravated Assault Upon a Peace Officer with Intent to Commit a Felony as the "felony offense."  U.S.S.G. § 2K2.1(b)(6).  The Court need not, however, consider only whether Ortiz' possession was related to another charged crime.  The Court can consider Ortiz' relevant conduct, which may consist of "'much more [] than the offense of conviction itself, [including] uncharged and even acquitted conduct.'"  United States v. Gambino-Zavala, 539 F.3d at 1230 n.3 (quoting United States v. Allen, 488 F.3d 1244, 1254-55 (10th Cir. 2007)).  The Court, thus, looks at two felony offenses to determine whether the United States has provided sufficient evidence that Ortiz committed either of these offenses and possessed the firearm in connection with these offenses: 18 U.S.C. § 875(c) (making threatening communications in interstate commerce), and N.M. Stat. Ann. § 30-20-12 (stating that the use of telephone to terrify, intimidate, threatened, harass, annoy or offend is a felony).

There is not sufficient evidence for the Court to conclude that Ortiz committed a felony

threat offense.  "'[S]entencing factors need only be proven by a preponderance of the evidence,' and the Court is entitled to rely on circumstantial evidence and draw plausible inferences therefrom.'"  United States v. Tobanche, 115 F. Supp. 3d 1339, 1359 (D.N.M. 2015), aff'd, 643 F. App'x 781 (10th Cir. 2016)(Browning, J.)(quoting United States v. Paneto, 661 F.3d 709, 716 (1st Cir. 2011).  Even with a preponderance-of-the-evidence standard, the United States has not demonstrated that Ortiz' possession facilitated his threatening telephone calls.  The relevant inquiry is not whether Ortiz' handgun possession caused the felony offense, but whether it "ma[d]e easier," United States v. Marrufo, 661 F.3d at 1207, or "embolden[ed]," United States v. Justice, 679 F.3d at 1255, the offense.  In the United States' cited Tenth Circuit cases, the defendant's possession of a gun gave him protection while he carried out drug deals or confronted other people, or the defendant's criminal history is so violent that the court can determine that the defendant has reason to believe the firearm would be used in another felony.  See Response at 3 (citing United States v. Hoyle, 751 F.3d at 1167 (stating that the district court correctly applied the enhancement where a defendant, in connection to the felony of criminal threat, pointed a firearm at the victim's head and then threatened to shoot); United States v. Fredrickson, 195 F.3d 438, 440 (8th Cir. 1999)(stating that, in part, a defendant's false statement on a firearm application, lengthy violent history, and continuing obtainment of firearms indicated that the defendant's firearm would be used in connection with a felony offense)).  Other Tenth Circuit cases are consistent with the cited cases.  See United States v. Farnsworth, 92 F.3d 1001, 1010 (10th Cir. 1996)(applying the enhancement, because the defendant "threatened someone with a gun" in person by asking if the victim wanted the defendant to shoot her).

In contrast, Ortiz placed the telephone calls from the safety of his home.  Dialing a telephone number and making threatening statements over that telephone does not thrust a

defendant into dangerous situations where he is exchanging money and drugs with other criminals. It is possible that Ortiz' firearm possession made easier or emboldened his telephone call; the preponderance of the evidence does not, however, support such an inference. See United States v. Magallanez, 408 F.3d at 684-85. Accordingly, the Court concludes that Ortiz' firearm possession was not connected with his threatening telephone calls and does not justify an enhancement under § 2K2.1(6)(B). See United States v. Gallegos, No. CR 15-2223 JB, 2017 WL 3189894, at *6 (D.N.M. May 18, 2017)(Browning, J.)).

**IT IS ORDERED** that the Objection to the four-level enhancement in the Defendant's Objections to the Presentencing Investigation Report and Sentencing Memorandum, filed February 13, 2020 (Doc. 27), is sustained.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

John C. Anderson
   United States Attorney
Elisa Christine Dimas
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*


Amanda R. Lavin
   Assistant Federal Public Defender
Federal Public Defenders Office
Albuquerque, New Mexico
*Attorneys for the Defendant*